Case number 20-1671 Helena Agri-Enterprises LLC v. Great Lakes Grain LLC et al. Argument not to exceed 15 minutes per side. Mr. Zurich, you may proceed for the appellant. Thank you, your honors. May it please the court. Zach Zurich for appellant Helena Agri-Enterprises LLC. I've reserved three minutes for rebuttal. The record raises a fact question regarding first-time farmers Nicholas and Stacy Borson fraudulently utilize actual production history of the legacy Borson entities to obtain millions of dollars in financing and thousands of acres of cropland and are therefore acting as the successors to Helena's 15 million dollar legacy Borson judgment debtors principally controlled by the appellee's husband and father Dennis Borson. The district court erred one by granting appellee's motion for summary judgment and two denying three different timely file discovery motions made by Helena in this case. First as to the motion counsel on this production history point um I I do appreciate that it's really significant in this area right I can imagine making a big difference on the insurance and so forth but it seems like a very funny you know property interest I mean you know does one think of one's track record as a driver you know lack of car accidents as a property interest I wouldn't think of it as a property interest and it's true it may factor into the insurance you get but again I don't think of it as a transferable property interest and you seem to be treating it as a transferable property interest and that's that's odd to me do you have any cases that say you can think of it as a transferable property interest it just seems like a fact it seems like a fact it's a set of facts and you don't usually own facts your honor there while there isn't a specific case it's talking about within a veil piercing or fraudulent transfer theory uh history as a specific property interest as is as it is defined by the wooden transfer act it is very significant the importance of crop insurance and actual production history is shown by the various criminal cases cited in the appellant's brief well but just just a pause that just reminds me of my own driving record it's it's very relevant it can make a dollars and cents difference and I could commit fraud if I lied about it so I get it that it could be the premise of a fraud claim I don't understand how it's a transferable property interest and if it's not a transferable property interest how is there how to how does the statute or anything else apply to it your honor the difference between a driving record and actual production history is that actual production history is the key to unlocking financing for any farming operation because specifically in this instance appellees were leasing their land and so when they go to a lender the lender is taking collateral in the crop and so for a lender to understand how much collateral they're going to have in the crop they look at the actual production history and the crop insurance protecting the specific collateral how about this can I if you had some land which was very productive I wanted to buy it and I'm saying you know the price is a little expensive is there any chance I could not purchase the production history so that's a joke no one would think that's real you can't do that I can't say give me a hundred thousand discount because I don't want anything to do with the production history that's just it's nonsense isn't it no I disagree your honor because in in this situation the uh Risk Management Association the USDA sets forth two particular elements that must be shown in order for there to be a transfer which it specifically references as the action that's occurring between the transferor and the transferee and it's twofold one participation and management between the successor and the predecessor and then two participation in the physical production of the crops and so there's very strict standards that go into the transfer of this actual production history and let me ask you just the mechanics of it because I'm I'm I'm not clear as to how is the production history created and then how is it transferred just actually yes your honor so the the production history is created over years of farming and that's part of the reason that the proportionality of Helena's discovery request was met here because if you look into the record at the actual actual production history reports which are included in the evidence in the motion for summary judgment you'll see that there is reports where somebody physically takes data on a tractor and accounts for the actual yield or bushels that are produced in a given crop year and so this is computer generated data from a tractor yes your honor okay and is it based on just what crop runs through the tractor or is it based on like gps data or do you know the specific technological aspects of it I'm not entirely clear on your honor but I know that it's a specific metric that's reported to the crop insurance companies to determine whether there was a loss on a particular year and it's verifiable data and typically there is a that's reported for this actual production history does the data go in real time to the to who does the data go to when it goes on the computer is this part of the of the equipment itself or is it being transmitted to the crop insurer somehow through the through this mechanism yes your honor so it's it's actually taken once this data is calculated it's taken and it's reported to both the risk management association and the approved insurance provider in order to make a determination of the actual production history data and then the the rates for the crop insurance and the amount of yield protection that the crop insurance will have and I take it there's no non-disclosure agreement accompanying the transmission of the data to the these various entities no your honor well the it is still private protected data because specifically in this instance we had to obtain written authorizations from the appellees to obtain the documents that were relevant to the actual production history and when we look to the discovery motions by Helena that was a big portion of what took up the time once the appellees finally appeared into the case and so Helena obtained through freedom of information act requests and and finally authorizations provided by the appellees and they were able to get this data and then with respect to the motion for so you could get the data through a FOIA request yes your honor but then in terms of why isn't that make it public domain I mean how does it become private property if you can get it through a FOIA request your honor it's I think the not necessarily in it being proprietary or confidential it's what it allows the farmer or transferee to do with it and so in this instance because the appellees had actual production history from a mega farming enterprise such as the Borsons who at one point were farming over a hundred thousand acres they were able to in turn start a farming operation that was more than 19 times the USDA's 2019 average farm size in a report from the USDA the average farm size is 444 acres because of the transfer of this actual production history the appellees were able to each open farms that were over 8,000 acres why are those why are those under under your three theories of this case number one why are those new entities successors it requires common ownership our cases have repeatedly said that's a prerequisite to successor liability common ownership here the two new owners are not owners of the old companies yes your honor at least on paper but there are three fact issues that were created created by the evidence in the record as the continuity one the appellees are using the same land assets and personnel as the but common ownership is a absolute requirement i think do these factors go to common ownership or is there case law to suggest that you can actually even though the paper owner is clearly different from the old owner that you can actually book through the paper owner to see who is actually the true owner or the pragmatic owner or the practical owner is there any michigan case law for that proposition your honor in terms of successor liability it it has turned on the point of who is the actual person in charge here and i think that when we also look at the avoidable transfer act claim that's also a very big point that's at play here specifically turning to the badges of fraud that are an element with with that i mean doesn't it require that the debtor transfer something what debtor has transferred anything here when the equipment transfers come from a non-debtor entity and the only land transfer that i think you're challenging comes from series which is not a debtor so what is the transfer of property that you're challenging under the transfer statute your honor the the transfer predominantly that's important here is the actual production history and although the court is judgment entities they're they're controlled by abortion judgment debtor dennis forsen and so what what appellant is requesting from this court is that the court disregard the corporate formalities of those transferors as well however when we look at the council just help me on this particular point like let's let's just accept the idea they're they're related they're family members reason to be skeptical so i'll grant you all that for the sake of argument but but like what's the bad thing going on if these leases are all at fair market value i i don't it's struggling with why that's bad i mean if the money somehow ends up in dennis borson's hands isn't that actually good for helena i mean he's a judgment debtor now he has more money well tell me i can't figure out what the the game is that you're afraid they're playing your honor so one thing i want to address in your question was the the point about reasonably equivalent value or fair market value and that's a point that the district court aired when it was reviewing the brief or the briefing in this case when we turn to mcl 566.38 it explains the defenses that are available in avoidable transfer case and the district court aired by applying reasonably equivalent value to the avenue avoidable transfer that that helena saw you see the good faith and for reasonably equivalent value the reasonably equivalent value is only a defense as to the constructive fraud avenue avoidable transfer when there's a showing of the badges of fraud with intent to hinder delay into fraud you got 35 left in common sense terms where why is the money illegally going in one from one place to another and how is it being hidden from helena just your honor what is the fraud no the fraud yeah yes your honor the fraud is fraud by crop insurance fraud against the federal government and crop insurance and what it's done is it's allowed the helena borson entities to continue their fraud farming operation why is that bad why is it bad that they're from the money that they generate from the farming of the land is going to flow back through the lease and uh flow into a debtor hands that you can actually then try to take if the if the if they're not allowed to farm no money is being produced i would think that that is bad for helena because then there's no chance of getting anything if they're farming at least some money is being generated that may eventually flow back into a debtor from which you can recover your honor i see that i'm out of time may i address your answer or your question thank you your honor so the reason that that's an issue and that it's not good for helena is because when we look to um ecf 148 13 starting at page 18 26 you see a series of pages from meetings between the the legacy borson entities and their lender first farmers bank and trust and what you see in there is that there was an orchestrated plan such that the um unsecured creditors such as helena would be unable to touch or um execute upon the assets of the legacy borson entities specifically just real quickly are you making the point they're favoring secured creditors is that your point your honor it's not just that they're favoring secured creditors it is an orchestrated fraud to keep the secured creditors in place but also to avoid the um unsecured creditors by a fraudulent transfer of actual production history okay well that's i i've got it we'll we'll pursue this a little more in rebuttal let's hear from the other side thank you thank you to please the court uh i'd like to just address a couple points i think you've already sort of stolen my thunder on some of these issues um of what our points are but successor liability and count one of the counter claim is totally dependent on there being a continuity of ownership and the record is is very clear stacy is the sole owner and manager of her company nick is the sole owner and managed sole manager of his company the other side's argument that paper ownership is one thing i set set aside the factual point about whether it shows anything more than paper ownership would michigan law allow um for you if you if um the new entity was really being directed by a non-owner um allow for successor liability in that instance you know i haven't seen a a case that would allow that in a successor liability a mere continuation de facto merger type type claim here but but the the reality is there is nothing uh you're you're right paper ownership is it could be one thing uh and and that is stacy and nick are the owners of the new companies they were not owners of the old companies but there is nothing in the record to show that dennis borson or his folks uh arlen and sandra borson are involved in the new companies but there's just not so i mean this to me is the key part of the case i mean dennis is married to stacy right for a very long time in western law married people were treated as one now there were some very discriminatory components discriminatory components to that it was the man who became the one and that was quite unfair to the women but the insight is that you know is it really plausible they're not talking about the farming operation i mean you know they're going to bed and stacy says to dennis well we're debating whether to do soybeans or or corn this year and he says don't talk about it i mean don't you think they're having those conversations i mean how could that not be it's they're farmers they've been they're multi-generation farmers and if you ask me that is the instinct behind the whole case what well but but but the reality is there is nothing in the record to show that dennis is involved in in management of these these companies just might they talk just that they're still married they're still married yes yes and and you know might might they talk like any husband and wife talk might they talk like any husband or excuse me father and son talk um sure that that's that's certainly within the realm of possibility and and probably does happen occasionally but the reality is now that now that you bring it up the father son is is a father myself of sons that's even more perilous what father can't convey his opinion about something he knows a lot about to his sons when has that ever happened in history they always convey their opinion it's very annoying it's maybe annoying to to the kid but but but no reality is is that though that that the buck stops at nick he's the one that has to make the decision on management of the company same with stacy uh on on her company they make the decisions they're the managers uh they control the companies and there's nothing in the record that indicates dennis is doing anything for the companies except maybe given some fatherly advice or some husband advice uh like any family member might but there's no case law that would indicate that that's the case now even if you look at this is a little different scenario but if you look at the foodland distributors uh case uh that that's been cited that's a alter ego corporate piercing case they they look at the brother and say the brother's de facto owner okay that wasn't a successor liability case but you look at what the brother was doing there before they reached that okay so that's about the same as here but beyond that brother causes the sister to set up a company brother runs the company brother incurs debt with the company i can ask you a question does the record show whether um stacy and dennis had separate bank accounts separate um wills and all of that or is the record silent or they have a shared bank account the record is silent on on that i don't believe there's anything in the record on that it's silent shouldn't we assume it was shared and then shouldn't we say there's no veil to pierce well but wait a minute we're not talking about their personal bank accounts in terms of this case we're talking about whether new heights one news heights farm one new heights farm two are are separate entities and to be respected as separate entities which is the starting point of michigan law is that you do respect those unless they prove otherwise there's nothing in the record to show that there's any intermingling of of bank accounts or or other assets so why um go ahead go ahead i was just going to add um so suppose the hypothetical that these new entities become wildly successful garner hundreds of thousands of dollars those profits will go to the owners um nick and stacy so if it goes into stacy's bank account would it theoretically be possible for helena to garnish the bank account or something um at that point or uh does it um i think that concern would be that um even though dennis is not um ostensibly the owner if he's really benefiting um because stacy is paying him a whole bunch of money out of um the new entity's profits that that would be something that helena would be concerned about well just to make a amendment to the question they're stacy's not giving dennis a dime it's just going into their joint bank account so there's no giving it's a joint bank account which dennis can use whenever he wishes oh wait a minute though the money is going into the company account there's no record that the that the company doesn't have its own accounts no but the premise of judge murphy's they make a lot of money the owner gets the money eventually that's stacy and it goes into a joint banking account with dennis would helena have access to that if it goes into a joint account with dennis there's a presumption that he is entitled to half of the money and um under michigan law and they could do a garnishment of that bank account they could also uh probably they could obtain an order and you know and i forget the exact term it's if it's a against a partnership or an llc it would be a charging order against his interest but uh something similar to a charging order is part of the collection process uh that money that's goes to him has to be uh paid to the creditors there's actually one in one other case against dennis um at this point but um regardless of that the money is stacy's now by michigan law stacy's entitled to own a company separate from dennis her property is her separate property and and what she you know her company is a separate company from her and the money going in uh to that company is that company's money so no that's that's not a a basis for successor liability here um so i hope i've answered the the questions on on on that but yeah no you're you're uh that's a good way to think about it let me see if there are other questions um from good colleagues what's your answer about the fraudulent transfer of the actual production history well the first off there is no evidence of fraud in the record uh before the court now get back to the discovery issue in a minute but there is no evidence of any fraudulent uh activity uh here and and as judge yonker had noted a fraud committed against somebody else is not a fraud committed against helena and so that doesn't give a a right to relief but bottom line on this transfer of the aph is that the debtor does not transfer the aph even the part in on page 13 of the reply brief where they quote from the handbook uh the federal government's handbook on the crop insurance it says that the insurer transfers the yield rating um to the new farmer and they have certain conditions for but there has to be some approval by the owner of the land before the transfer occurs well no it it doesn't the owner of the land leases the land to the the tenant okay and the the tenant uh you know then applies for crop insurance the owner of the land doesn't approve it there's no signature requirement from the owner of the land the the tenant needs to meet the requirements for crop insurance and then was it the same crop insurer for for both um the debtor companies and for the uh the defendants here uh it was in 2019 and 2020 it was different but that's outside the record okay so here the the crop insurer already had the data from having insured the land before it was leased right okay so there was no transfer really no no there wasn't um so you know and you got to understand that you've got you know the farm so you got you know black acre in allegan county that has been farmed by one entity for a period of time the the new company gets the the crop rating for that farm in allegan county the the farmer had a farm somewhere else it would be a rating for that farm it's based on the farm and then it's based on the production of the entity that's farmed it before and um the the data is there at the insurance company they make the determination the federal regulations as we've cited say that the insurer determines or assigns the rating to the new farmer not the debtor so you can't have an avoidable transfer the other the other thing that's an important point on that avoidable transfer is simply that that there is no way for the creditor to monetize the the APH let's say that we jump back to the spring of 2019 and the creditor has their judgment in place they go out with a writ of execution they can't seize the APH and sell it there's no authority that's been presented to that I've not seen anything on that there's nothing in the regulations that allow that under avoidable transfer law the um the it's not the the SCD chemical case that we've cited um a michigan court of appeals case it's not a a transfer of assets um if there's nothing that the creditor can do with it and that's what the case is here the creditor can't do anything with it here is it really the case you could never sell production history in other words some wheeler dealer that's engaged in insurance and is hedging this hedging that you couldn't find a way to buy someone's production history in order to buy insurance that you then transfer back to the person that that's that's not a I've never seen anything to to indicate that so if the um if the um farmer uh stops farming then of course the APH really doesn't do them any good anymore it's not worth anything if the farmer is farming he can't sell the APH because it's got to be for his farming um and then when a new farmer takes over if they qualify to use the an APH a yield rating from past history they get that yield rating if they don't then they get this generic county rating that's uh some cases it's lower some cases it's higher um than the actual production history but it's not that it's a all or nothing type thing because crop insurance is available uh even without a past history it's just you don't get the good you know hopefully you'd have a good rating um that you will get if you have the qualifications and that that's what the insurer determines um and again that's why it's no no transfer now I take it there's nothing in the record showing a difference there's nothing here showing what the difference is between the APH and general county rating is no there there there isn't anything in the record on on that so council you were going to circle back to discovery can I I I this is just get the question right if if the court rules that it's really not transferable the production history is that was that most of what the discovery was about that they were still seeking or is it or there's aspects of the discovery they were seeking that went beyond that you know they the only thing I really know that they're seeking is is the crop production history uh the actual the APH um and and they you know this is is the discovery in this case was sort of I would say lacking and crazy on their part because they've never taken the deposition of Dennis Borson they've never taken the deposition of the crop insurance agent they've never asked for their depositions they've never taken the deposition of Arlen or Sandra Borson um they wait till the very last day of discovery to take the depositions of of Stacey Borson and Nick Borson and and they'd never asked for those depositions before that time and this is not just the last day of the first period of discovery but we have a period of discovery then it's extended then it's extended again after a hearing where the magistrate I had a nice phrase mush mush mush was what he told Helena to get done on the discovery um and and so this was rather you know lack of diligence there the crop insurance issue was was potentially if it was an issue issue at first because they had Great Lakes grain as a defendant from the beginning with the same claims against it and then of course Judge Anker ruled that the the added discovery wouldn't have made a difference to to him so um it's not an issue and that's why he he denied the the request for discovery all right well I think uh I think we understand your position uh thank you very much Mr. Vanderveen Mr. Zurich we'll hear your rebuttal um Mr. Zurich if you wouldn't mind just make sure I'm understanding what's your was the additional discovery all about production his crop production history is that really a fair way to think about what you still wanted that was the next thing that Helena was going to engage in was to obtain the representations that would have been made to Great American Insurance which is required by the crop insurance handbook verifiable evidence that the appellees participated one in the management of the transfer or farming operation and two participated in the physical farming activities in order to authorize a transfer so had we been able to obtain that evidence we would have had conclusive evidence not just a fact issue as determined by our expert longtime crop insurance um director and in the record we would have had actual evidence of the fraud perpetrated by the appellees in this case are these representations on a form like a standard form that you like check these things that you've had the requisite management yes yes your honor in fact like the standard form is the no we don't your honor the standard form that's in the record and to that point right above the signature line states that I certify under penalty of perjury that the foregoing is true and correct and so it's a it's a serious issue to make misrepresentations regarding the engagement and the management and actual physical activities in the case but one thing I want to turn the court to is that the badges of fraud in this case cannot be overlooked and it's one point that the district court significantly erred in its opinion in order in a in a footnote fraud they'll have to be towards Helena not towards the insurer well what I'm referring to your honor is specifically the badges of fraud and the voidable transfer statute and here there are at least six badges of fraud that were present one the transfer obligation was to an insider two before the was incurred the debtor had been sued or threatened with suit three the debtor was insolvent or became insolvent shortly after the transfer was made or obligation was incurred four the transfer court shortly before after a substantial debt incurred to be clear your honor the appellee entities were created less than three weeks after the judgment was entered against the Borson judgment entities in this case and that's just four badges of fraud fifth badge of fraud the transfer was substantially of all of the assets then six the debtor transferred the essential assets of the business to a leaner and specifically here your honor this is important because what um so usually the voidable transfer statute means that the transfer is void so if your claim is that the APA transfer is void if you succeed how does that help you that doesn't bring any more money back to the debtors it doesn't do anything really you want to respect you what i'm saying that the voidable transfer statute okay we take the transfer back they get their API back how does that help you your honor i think that's a a there is a misunderstanding of the actual relief that's available in the voidable transfer statute at 566.37 in addition to voiding the actual transfer the statute states that available relief includes an injunction against the transfer or any other property at the transferee to an appointment of a receiver to charge of the asset transfer or any other property of the transferee or three any other relief specifically here and your honor may i finish my answer yeah thank you your honor specifically here helena wanted for the a receiver to be appointed over the borson family enterprise when we look at the chs capital case receiver robert o'keefe looked at this the borson defendants in this case and urged the court okay you can finish your answer to the question as opposed to making a dependent not that many dependent clauses yes your honor so specifically to answer the question it wasn't that helena was seeking a a void or seeking money from this actual production history transfer helena was seeking to put all of the parties into a receivership so that the the transfers could be analyzed by a third party receiver and so that the fraud can stop for these reasons thank you very much mr zurich and thank you mr van der veen we are grateful for your briefs and your oral arguments above all for answering our questions which we always appreciate thank you so much okay case will be submitted thank you thank you your honor